HIRAM B. SHERMAN *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 23, 1904.*

1. CONSTITUTIONAL LAW—*legislature has power to provide for the appointment of election judges by the county court.* The provision of section 13 of article 2 of the Election act of 1885, (Laws of 1885, p. 150,) authorizing the confirmation and appointment of judges and clerks of election by the county court, is not unconstitutional as special legislation nor as violating the constitutional division of the powers of the government into legislative, executive and judicial. (*People* v. *Hoffman,* 116 Ill. 587, adhered to.)

2. SAME—*provision of section 13 of article 2 of Election act, concerning punishment of election officers for contempt, is valid.* The provision of section 13 of article 2 of the Election act of 1885, making judges and clerks of election officers of the court, and authorizing the court to try contempt proceedings against them in a summary way in open court without formal pleadings is not unconstitutional, as depriving the defendants of liberty without due process of law.

3. ELECTIONS—*section 13 of article 2 of Election act of 1885 construed.* The "misbehavior" of election judges and clerks which the county court may punish by a contempt proceeding is not misbehavior at the mere caprice of the county court, but means misconduct in connection with the duties of their office, in violation of law or their instructions respecting such duties.

4. CONTEMPT—*fact act is indictable does not preclude punishment by contempt.* The fact that an act is indictable or punishable otherwise does not deprive a court of the power to punish it as a contempt.

5. SAME—*what act of election judges is punishable as a contempt.* The act of election judges in permitting, in many different instances, the names of registered voters to be used and entered on the poll books twice, without proper investigation or requiring the affidavit required of a non-registered voter, is such misbehavior as is punishable, under the statute, as a contempt.

CARTWRIGHT and SCOTT, JJ., dissenting.

WRIT OF ERROR to the County Court of Cook county; the Hon. ORRIN N. CARTER, Judge, presiding.

C. STUART BEATTIE, for plaintiff in error Sherman.

WILLIAM S. FORREST, and BENJAMIN C. BACHRACH, for plaintiffs in error O'Donovan and Kelly.

H. J. HAMLIN, Attorney General, and CHARLES S. DE-
NEEN, State's Attorney, (A. C. BARNES, W. W. WHEE-
LOCK, A. M. PENCE, and S. S. GREGORY, of counsel,) for
the People.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a proceeding for contempt of court, instituted
in the county court of Cook county by the State's attor-
ney, against plaintiffs in error, for misbehavior as judges
of election during the judicial election held June 1, 1903,
in the twenty-seventh precinct of the eighteenth ward
in the city of Chicago.

On June 8, 1903, one Robert N. Dodson filed his affi-
davit in the county court, in which he stated that he was
a duly registered voter, and voted in said twenty-seventh
precinct at the election held June 1, 1903; that the three
judges and two clerks were present at the time he cast
his vote, and the judges searched for his name upon the
register and announced it in a loud voice, as required by
law; that he was duly registered from 180 West Madison
street, in said precinct, and was the only person of that
name, to the best of his knowledge and belief, at that
number; that he voted only once at that election and
that the poll-books for that precinct disclosed that he
had been recorded therein as having voted twice. He
further enumerated in his affidavit eleven other similar
instances of registered voters in that precinct having
been recorded upon the poll-books as having voted twice.
This affidavit was read in open court, and the State's
attorney moved for a rule upon plaintiffs in error to show
cause why they should not be punished for contempt of
court for misbehavior in their office as judges of said elec-
tion. To the entry of this rule the plaintiffs in error ob-
jected, upon the ground that the affidavit of Dodson did
not state facts which amount to misbehavior in office
and was insufficient to justify the entry of such a rule,—
which objection was overruled by the court. Thereupon

the rule was duly entered, and a motion was afterward
made by the plaintiffs in error to discharge it, upon
substantially the same grounds as those set up in their
motion previously made, and in addition, that the order
and rule as entered were void because not founded up-
on a complaint or information, and that the statutory
provision upon which said order and rule are founded is
void, for want of power in the legislature to make the
conduct of the officers of election a contempt of court,
and because it is special legislation,—which motion was
denied by the court. Thereupon the plaintiffs in error
made oral answers to said rule and order, which oral an-
swers were to the effect that, reserving to themselves
all right of exception to said affidavit, order and rule,
they were not guilty of such misbehavior in office. Evi-
dence was heard on behalf of the State, and at the close
of this evidence, and again at the close of all the evi-
dence, a motion was made by plaintiffs in error to vacate
the order, to discharge the rule to show cause and to set
at liberty the plaintiffs in error for the reasons above
enumerated, and also for the further reason that the evi-
dence adduced failed to show that the plaintiffs in error
were guilty as charged. This motion was denied by the
court, and an order entered finding the facts as true as
charged in the affidavit, and that votes in the names of
eleven different voters registered only once on the regis-
ters of said precinct were received twice in each of said
eleven names by the said judges of election, and that no
affidavit was required or returned by said judges of elec-
tion of the persons who voted in said names the second
time, and that such acts were knowingly, willfully and
corruptly done, and adjudging plaintiffs in error guilty
of contempt of court for misbehavior as officers thereof
while acting as such judges of election, and directing
that each plaintiff in error stand committed to the county
jail of Cook county for a period of three months for con-
tempt of court. This writ of error was made a *super-*

*sedeas,* and the plaintiffs in error were admitted to bail pending the determination of the writ, and are now at liberty upon bail.

Several questions are raised in the case, but the principal one is the validity of the act entitled "An act regulating the holding of elections, and declaring the result thereof in cities, villages and incorporated towns," approved June 19, 1885, and contained in Hurd's Statutes of 1901, pages 794 to 835. Section 9 of article 2 provides for the selection of the judges and clerks. Section 11 provides for their confirmation by the county court. Section 13 provides that "after such confirmation and acceptance of such commission, such judges and clerk shall thereupon become officers of such court, and shall be liable in a proceeding for contempt for any misbehavior in their office, to be tried in open court on oral testimony in a summary way, without formal pleadings, but such trial or punishment for contempt of court shall not be any bar to any proceedings against such officers, criminally, for any violation of this act."

The first contention of plaintiffs in error is directed against that part of section 13 above quoted on the ground that it was enacted upon the false assumption that judges and clerks of election, as such, are concerned in the administration of justice, and that the General Assembly has no power, under the constitution, to make such judges and clerks officers of the county court and liable for contempt.

Article 3 of the constitution divides the powers of government into three departments,—legislative, executive and judicial,—and prohibits one department from exercising any power properly belonging to either of the others, except as thereinafter expressly permitted. We held in the case of *People* v. *Morgan,* 90 Ill. 558, that this section does not undertake to define, in any specific manner, what are legislative, executive or judicial acts, but, like most other provisions of the constitution, the

terms employed are of the most general and comprehensive character. Section 18 of article 6 of the constitution, after giving the county court jurisdiction in certain specific matters, concludes as follows: "And such other jurisdiction as may be provided for by general law." This language is very liberal, and authorizes the legislature to extend the jurisdiction over a great many subjects, and even in its absence it has been repeatedly held that the power of the judiciary to appoint certain officials whose duties are not strictly judicial, or even necessarily connected with the business of the court, has been fully recognized. In the cases of *People* v. *Williams*, 51 Ill. 63, and *People* v. *Morgan, supra,* statutes which authorize circuit courts to appoint assessors and South Park commissioners were held to be constitutional. In the latter case the point was expressly raised that the court could not appoint commissioners for the reason that such an appointment was an executive or political function, and not judicial, but we held that feature of the law constitutional. The Supreme Court appoints an official reporter of its decisions, a librarian for its library and janitors to take care of its court rooms. Judges of the circuit courts appoint masters in chancery and court reporters. The Supreme Court and circuit courts, under certain conditions, are authorized by statute to appoint their clerks to fill unexpired terms. While it is true that all of these offices are connected with the judicial branch of the government, yet the power to appoint is generally conferred by statute, and not by fundamental law.

Several of the points made upon this appeal were considered by us in the case of *People* v. *Hoffman,* 116 Ill. 587. We there held that this law was constitutional with reference to the power of the county court to appoint the election commissioners, and in that opinion reviewed the authorities. As to the duties of election commissioners we there said (p. 601): "If, however, the constitutional division of the powers of government into three branches

should be construed as a limitation of this jurisdiction to judicial subjects alone, an examination of the act will show that many of the duties to be performed under it are of a judicial nature. The commissioners consider evidence and decide whether the judges of election have properly or improperly refused registration. The county court reviews the decision of the commissioners, and in so doing also passes upon the weight of evidence. The exercise of such functions as these is appropriately delegated to a judicial tribunal." We know of no reason why we should now change the views there expressed, and, as already said, that case is conclusive of many of the points raised in this case, including the contention that this statute is special legislation.

The power to punish for contempt is not limited strictly to the judiciary, for since the establishment of free government the legislative branch has exercised the power to punish all who refuse to obey its mandates. It has also always been the right of courts of record to punish for contempt, not by virtue of any specific legislative authority, but by the common law; and in recent years this power has been greatly enlarged so as to cover a multitude of cases, some of which are not entirely judicial in their nature. Courts have power to punish, in certain cases, administrators, executors, guardians, masters in chancery, reporters, sheriffs, bailiffs, clerks, jurors, witnesses, attorneys and receivers. Some of these are merely ministerial officers of the court, charged with no duties which are judicial in their character, and yet where a court appoints officers to act with reference to the subject matter committed to it for administration, it is necessary that these officers should be concerned with the judicial conduct of the court, and hence guilty for violation of the same. The extent to which the law of receivership has been developed by the courts is remarkable. Receivers are appointed by the courts and become officers of the courts making the appointment, even though

their acts are, generally, ministerial. They may take charge of an extensive line of railroad, employing large numbers of employees and handling large sums of money. They operate railroads under the directions of the courts and are responsible to the courts for their conduct, and are liable for any willful mismanagement of the affairs entrusted to them. Not only are they individually responsible, but other employees are governed by the same law; and the powers of the courts are almost unlimited, and must, of necessity, be so for the proper administration of justice.

The government is divided into three branches, and the lines of demarkation between the branches are not clearly and definitely drawn. The managing and controlling of elections cannot, therefore, be said to necessarily belong to the executive or political branch, but, as we have seen, the constitution, in defining the powers of the county court, gives it such powers and duties as may be conferred upon it by general law. As often announced, the constitution is a limitation upon and not a grant of power. All power and authority are vested in the people. The people delegate powers to the legislature, hence the legislature can enact any laws not expressly limited by the constitution. In order that legislation be held unconstitutional there must be some express provision prohibiting it. In passing upon the constitutionality of a statute all presumptions are in favor of its validity and all doubts are resolved in its favor. No statute should be held unconstitutional unless the court is convinced, beyond a reasonable doubt, that it is not constitutional. No specific section of the constitution has been pointed out by counsel for plaintiffs in error with which this statute is in conflict. The legislature, in its wisdom, has entrusted this subject to the county court, and we held in the *Hoffman case* that the law, in that respect, was constitutional. If the legislature had the power to entrust the elections to the

custody of the county court, it also had the power to clothe the county court with all necessary and reasonable authority to properly administer the law and see that it was obeyed. The election judges and clerks are expressly made officers of the court. They are commissioned by the court, and, as we have held, their acts are to a certain extent judicial and they are liable for summary punishment for disobedience. The proper and honest conduct of elections is one of the most important functions of government, and the legislature certainly is charged with the duty of enacting such laws as will accomplish this end. We find no constitutional provision prohibiting this power being conferred upon the county court, and we think this section of the law is constitutional and should be upheld.

All that is said about the wisdom and beneficial operation of this statute is aside from the question of its constitutionality. It is either valid or invalid.

It is next insisted by plaintiffs in error that the statute authorizing the court to proceed to hear the case without an affidavit or formal statement in writing as to the nature of the charge or accusation,—in fact, without formal pleadings and upon oral testimony, in a summary manner,—is unconstitutional, as it deprives the defendants of their liberty without due process of law. We do not see how this contention can be sustained. A part of what is already stated in this opinion applies with equal force to this contention. It is the intention of the act that proceedings under it shall be summary, vigorous and effective. The provisions complained of were enacted, evidently, for the purpose of preventing the delays which very formal proceedings require. There is nothing in the act to prevent the defendants from having all their rights under the law. The provisions must be given a reasonable construction. Under them the defendants are entitled to a full and impartial hearing, not only as to the exact nature of the charges against them,

but they must be given the fullest opportunity of offering evidence in their own defense. After the case has been tried the defendants still have their right of appeal, where any errors which have been committed may be corrected. Hence we do not see how they can claim that they are deprived of their liberty without due process of law.

The next objection is, that the act makes the county court the judge of what constitutes misbehavior, and under its provisions the defendants may be punished twice for the same offense,—once for contempt, and also criminally. The misbehavior referred to in the statute does not mean any misbehavior at the mere caprice of the county court, but refers to misbehavior of the judges in connection with the duties of their office,—to conduct in violation of the law and the instructions which they have received concerning their duties. These are the only acts of misconduct for which they may be punished. Hence, in this respect the defendants have no cause for complaint. As to the second contention, it is a well known rule of law that the mere fact that an act may be indictable or punishable in some other manner does not deprive the court of the power to punish it as a contempt. 6 Am. & Eng. Ency. of Law,—2d ed.—p. 66, and cases cited.

The next assignments of error are, that the facts recited in the affidavit filed by Dodson are not sufficient to constitute contempt; that the objection to the entry of the rule to show cause, and the motion to vacate the order to show cause, and the motion to discharge the rule and set the plaintiffs in error at liberty, should each have been sustained by the court; that the judgment is contrary to the evidence, and that the court permitted improper remarks of the State's attorney. All of these assignments can be considered together. The law under which this election was held requires all persons voting to be registered, and it was the duty of the judges to check the names of the voters on the register as the

votes were deposited. No unregistered vote could be legally cast without affidavit being made, which affidavit must be returned to the election commissioners. The plaintiffs in error were sworn judges of this election and presumed to know the law. They permitted persons to vote twice on the same name from the register without proper investigation and without making the affidavit required. In eleven different instances this was done, and it certainly could not be said that it was done so many times through mere mistake or inadvertence. The affidavit filed by Dodson stated these facts, and was sufficient, under the statute, to constitute a contempt and to notify the plaintiffs in error as to the charge which they were called upon to answer. The charges made in the affidavit were amply sustained by the evidence offered, and this being true, the court committed no error in passing on the various motions with reference to the entry of the rule to show cause, etc. In the arguing of the case the assistant State's attorney stated that the failure of the defendants to make answer should be taken against them, and that the mere documentary evidence offered was sufficient to convict, and that the very nature of the case called upon the defendants to explain. To these remarks the plaintiffs in error objected and the objection was overruled. The case was tried before the court without a jury, and we do not see how the remarks, however objectionable, in any way influenced the court or were prejudicial to the plaintiffs in error.

Upon a consideration of the whole case we find no reversible error, and the judgment of the county court is affirmed.                        *Judgment affirmed.*

CARTWRIGHT and SCOTT, JJ., dissenting.