THE PEOPLE *ex rel.* Francis E. Broomell, Petitioner, *vs.* PETER M. HOFFMAN, Sheriff, *et al.* Respondents.

*Opinion filed June 16, 1926.*

1. ELECTIONS—*City Election act applies to all elections—judges and clerks.* The City Election act is, in a municipality which has adopted it, applicable alike to all elections, whether held to choose public officers or to pass upon some measure or proposition submitted by proper authority; and the city council cannot, by an ordinance submitting a proposition, provide polling places, judges and clerks so as to abrogate or supersede the provisions of the City Election act and thereby make said judges and clerks the council's appointees instead of officers of the county court, as provided by the act. (*Graham* v. *People,* 135 Ill. 442, distinguished.)

2. SAME—*provision of the City Election act making judges and clerks liable for contempt is valid.* The provision of section 13 of article 2 of the City Election act making judges and clerks of election officers of the county court confirming their appointment and

authorizing the court to try contempt proceedings against them in a summary way in open court without formal pleadings does not deprive them of liberty without due process of law and is valid.

3. SAME—*provision of the City Election act making judges and clerks liable for contempt is covered by title of act.* The provision of section 13 of article 2 of the City Election act making judges and clerks of election officers of the county court and authorizing the court, by contempt proceedings, to punish them for misbehavior is within the scope of the title of the act, as it tends to make the act effective and is germane to its object and purpose in regulating the holding of elections.

4. CONSTITUTIONAL LAW—*what is a sufficient compliance with provision as to title of act.* The purpose of the constitutional provision as to the title of an act is accomplished when a law has but one general subject which is fairly indicated by its title, and if the general subject indicated by the title reasonably covers the provisions of the act and is not calculated to mislead the General Assembly or the people it sufficiently complies with the constitution.

5. SAME—*what provisions may be considered as within the subject or title of act.* The General Assembly must determine for itself how broad and comprehensive the object of a statute shall be and how much particularity shall be employed in the title defining it, and an act with a single general subject, indicated in the title, may contain many provisions, however diverse, so long as they are not inconsistent with or foreign to the general subject and may be considered in furtherance of such subject by providing for the means of carrying out the general object.

ORIGINAL petition for *mandamus.*

JOSEPH B. FLEMING, (WALTER F. DODD, of counsel,) for petitioner.

GEORGE F. BARRETT, for respondent Peter M. Hoffman; HENRY A. BERGER, and JOHN F. HIGGINS, for other respondents.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Pursuant to leave granted, the People of the State, on the relation of Francis E. Broomell, filed an original petition for a writ of *mandamus,* alleging that the county court

of Cook county, by an order entered September 15, 1925, upon a rule against William Burke, Fred Nehring, Charles Newman, William Restivo and Jack Balaban to show cause why they should not be punished for contempt, and upon their sworn answers to the rule and on the evidence heard, found that a special proposition election was held in the city of Chicago on April 7, 1925, on the question of the adoption of an ordinance providing for a comprehensive municipal local transportation system; that Burke, Nehring and Balaban served as judges and Restivo and Newman as clerks of the election in the sixteenth precinct of the forty-second ward; that they were officers of the county court by virtue of their respective offices; that Burke, Nehring and Balaban, as judges, wrongfully received, and Restivo and Newman, as clerks, wrongfully recorded, votes twice in the names of the same registered voters; that the respondents willfully kept a false poll-list and knowingly inserted in it the names of one hundred persons who did not appear at the polling place of the precinct; that the respondents, without cause, absented themselves from the polls during the hours of the election, and that by reason of these facts they were guilty of misconduct and misbehavior as officers of the county court and had failed to purge themselves from the contempts so found. By the order the rule was made absolute, each respondent was adjudged guilty of contempt of the county court and committed to the county jail for six months, and the sheriff was commanded to arrest and imprison them. Later it appeared that Restivo and Balaban had not been apprehended or served with a copy of the rule, and by an order entered on October 22, 1925, *nunc pro tunc* as of September 15, 1925, the original order was amended by striking their names therefrom. The petition further shows that "An act regulating the holding of elections and declaring the results thereof in cities, villages and incorporated towns in this State," approved June 19, 1885, as subsequently amended, was adopted by the city of

Chicago and applied to all elections within the city and particularly to the election of April 7, 1925; that the act provides that the judges and clerks of election appointed by its authority shall "become officers of such court and shall be liable in a proceeding for contempt for any misbehavior in their office, to be tried in open court on oral testimony in a summary way, without formal pleadings," and that the order of September 15, 1925, was entered by the county court pursuant to authority conferred by that act. The concluding allegations of the petition are that no appeal was prosecuted from the county court's order, but that Nehring, Newman and Burke on September 18, 1925, surrendered to the sheriff, who released them in an hour, and that they have since been at large; that on October 23, 1925, a certified copy of the order as amended was delivered to the sheriff and demand was made upon him to execute the order, but that he refuses to do so. The prayer of the petition is for a writ of *mandamus* commanding him to perform that duty.

The sheriff made a motion, supported by suggestions, to dismiss the petition. A similar motion, with like suggestions, was made by Nehring, Newman and Burke. These suggestions deny that the sheriff released Nehring, Newman and Burke without authority or that he refused to execute the county court's order, but aver that on September 18, 1925, a petition for a writ of *habeas corpus* was filed in the circuit court of Cook county in behalf of Nehring, Newman and Burke which charged that they were detained by the sheriff without authority, and set forth the petition filed in the county court alleging misconduct and misbehavior on the part of Burke, Nehring, Balaban, Newman and Restivo as officers of election and asking a rule to show cause why they should not be attached for contempt. The suggestions show that the petition for a writ of *habeas corpus* further set forth the rule entered on the petition filed in the county court and the joint and several

answer, under oath, of Nehring, Newman and Burke to
that rule. The answer specifically denied the misconduct
and misbehavior charged; averred that a judge of the
county court had no power or authority to enter the rule
because the City Election act was unconstitutional; charged
that the petition for a rule to show cause was insufficient to
require an answer and that the county court had no juris-
diction of their persons; averred that on April 7, 1925,
criminal informations based on the acts charged in the peti-
tion for a rule to show cause had been filed against them
in the same county court; that the informations were still
pending, and that, having purged themselves of contempt,
they asked to be discharged. The suggestions further show
that the petition for a writ of *habeas corpus* alleged that
Nehring, Newman and Burke, upon the filing of their an-
swer to the rule to show cause, moved the county court to
discharge them but that the motion was denied; that by
the filing of their answer under oath they were entitled to
their discharge, but that the county court, although it had
lost jurisdiction of the cause, ordered a hearing; that their
demand for a jury trial was denied, the county court heard
evidence, and on September 15, 1925, entered an order ad-
judging them guilty of contempt of court and committing
each of them to the county jail for six months; that the
order is void and that a writ of *habeas corpus* should issue.
It further appears from the suggestions that a hearing was
had on the petition for a writ of *habeas corpus* before one
of the judges of the circuit court; that the sheriff, by his
counsel, resisted the granting of the prayer of the petition;
that the circuit court found that Nehring, Newman and
Burke, as officers of the special election held on April 7,
1925, were not officers of the county court within the mean-
ing of section 13 of article 2 of the City Election law and
that the county court had no jurisdiction of their persons;
that they were accordingly discharged by the order of the
circuit court on October 23, 1925, and that by virtue of

that order no duty rests upon the sheriff to take them into custody.

The motions of the respondents to dismiss the petition for a writ of *mandamus* requested, in the event the court denied those motions, that the suggestions supporting them be treated by the court's order as the answers of the respondents to the petition and that the petitioner be ruled to demur or plead to those answers. Petitioner filed objections to respondents' motions to dismiss and asked that those motions be denied and that the suggestions made in their support be treated as the answers of the respondents to the petition, in accordance with their alternative motions. The suggestions were taken as the respondents' answers and the petitioner filed general demurrers to those answers. The cause is thus submitted.

The petitioner contends that the act entitled "An act regulating the holding of elections and declaring the result thereof in cities, villages and incorporated towns in this State," approved June 19, 1885, as subsequently amended, commonly called the City Election act, controls elections in the city of Chicago and that it applied to the election of April 7, 1925, in the sixteenth precinct of the forty-second ward of that city and to the judges and clerks conducting the election. The respondents, on the contrary, insist that the county court had no jurisdiction of the persons of Nehring, Newman and Burke, for the reason that they were not officers of the court within the meaning of the City Election act, and that, in any event, section 13 of article 2 of that act, creating contempts for misconduct on the part of election officers, is unconstitutional.

It is admitted that the City Election act had been adopted by the electors of the city of Chicago prior to April 7, 1925. Section 10 of article 1 of that act provides that after its adoption the act "shall become operative and binding and the law for all elections in such city, and for the electors thereof, and all courts and other persons shall

take notice thereof." (Cahill's Stat. 1925, p. 1096.) By the twenty-third section of article 6 of the act the word "election," as used in the act, shall be construed to designate elections had within any city, village or incorporated town adopting the act, for the purpose of enabling electors to choose some public officer or officers under the laws of this State or of the United States, or to pass upon any amendment, law or other public act or proposition submitted to vote by law. (Cahill's Stat. 1925, p. 1117.) The City Election act is therefore, in a municipality which has adopted it, applicable alike to all elections, whether held to choose public officers or to pass upon some measure or proposition submitted by proper authority. The legislative intent, manifested by the express provisions to which reference has been made, is that in such a municipality only a single agency for the conduct of elections shall exist.

Section 13 of article 2 of the City Election act, (Cahill's Stat. 1925, p. 1099,) after providing for an application to the county court for the confirmation and appointment of the judges and clerks of election, the entry of an order by the county court that cause be shown, if any exists, against their confirmation and appointment, the giving of notice of such order, an opportunity to file objections and a hearing upon such objections, provides: "Upon the confirmation of such judges and clerks, at any time, a commission shall issue to each of such judges and clerks, under the seal of such court, and appropriate forms shall be prepared by said board of commissioners for such purpose. And after confirmation and acceptance of such commission, such judges and clerks shall thereupon become officers of such court and shall be liable in a proceeding for contempt for any misbehavior in their office, to be tried in open court on oral testimony in a summary way, without formal pleadings, but such trial or punishment for contempt of court shall not be any bar to any proceedings against such officers, criminally, for any violation of this act." The provi-

sion of this section making judges and clerks of election officers of the court and authorizing the court to try contempt proceedings against them in a summary way in open court without formal pleadings does not deprive them of liberty without due process of law and is valid. *Sherman* v. *People,* 210 Ill. 552.

The proposition submitted at the election of April 7, 1925, was an ordinance providing for a comprehensive municipal local transportation system. The respondents concede that the proposition so submitted was authorized by law. The ordinance submitting the question provided that "the polling places selected by the board of election commissioners of the city of Chicago and the judges and clerks of election appointed by said board for the general election of aldermen of the city of Chicago, which was held on the 24th day of February, 1925, are hereby selected and adopted as the polling places, judges and clerks for the said special municipal election at which the two said questions are to be submitted." The respondents argue that by this provision the city council took the special election out of the operation of the City Election act, and that it expressly selected and appointed, as judges and clerks of election, those judges and clerks who had acted at the aldermanic election on February 24, 1925, and adopted the polling places used at that election. Neither of these positions is tenable. The City Election act had been adopted by the city of Chicago and applied to the election under consideration, and the city council could not by the ordinance abrogate or supersede that act. No authority is vested in the council of any city under the City Election act to provide for the conduct of an election independently of that act, and it is to be presumed that the city council, as a public body discharging its duty, in submitting the ordinance for a local transportation system, merely sought to invoke, and not to contravene, the provisions of the City Election act. Moreover, by the adoption of the judges and clerks who

conducted the aldermanic election on February 24, 1925, as the judges and clerks for the election of April 7, 1925, the city council did not make them its appointees. They had been appointed in accordance with and were acting under the provisions of the City Election act. Judges and clerks appointed under that act do not necessarily serve for a single election. Their term of office as fixed by section 10 of article 2 is one year, (Cahill's Stat. 1925, p. 1098,) and the county court by its contempt order expressly found that the judges and clerks who conducted the election of April 7, 1925, were officers of that court.

But respondents assert that *Graham* v. *People,* 135 Ill. 442, conclusively sustains their contention that they were not officers of the county court. It was there held that judges and clerks of a primary election selected pursuant to section 3 of "An act to regulate primary elections of voluntary political associations and to punish frauds therein," (Laws of 1889, p. 141,) were not officers of the county court, and that the court had no authority or jurisdiction to punish them for contempt for misbehavior in office. The judges and clerks acting in a party primary under that act derived their power not from the county court but from their selection by the committee or body which required the primary to be held. Such voluntary primary elections were not at that time included within the terms of the City Election act. The Primary act of 1889 was, however, made inoperative by section 47 of the Primary act approved May 11, 1901. (Laws of 1901, p. 195.) By section 7 of the act of 1901 all persons serving as judges and clerks at any primary election were declared to be officers of the county court and liable to punishment in a proceeding for contempt for any misbehavior, to be tried in open court on oral testimony, in a summary manner, without written pleadings. (Laws of 1901, p. 180.) Section 17 of the "act to provide for the holding of primary elections by political parties," approved March 9, 1910, (Cahill's Stat.

1925, p. 1124,) now in force, contains a similar provision. The decision in *Graham* v. *People, supra,* was governed by the act of 1889, long since repealed, and obviously does not support the contention that respondents, as officers of the election of April 7, 1925, were not officers of the county court.

Respondents further contend that section 13 of article 2 of the City Election act, to the extent that it makes judges and clerks of election officers of the county court and liable to punishment for contempt for misbehavior in office, violates section 13 of article 4 of the constitution, which prohibits an act from embracing more than one subject and requires that subject to be expressed in the title. The pertinent part of the title of the City Election act is, "An act regulating the holding of elections and declaring the result thereof in cities, villages and incorporated towns in this State." Nothing in the title, it is insisted, indicates that the act makes the judges and clerks of election officers of the court or confers upon the court the power to punish misbehavior in office in a proceeding for contempt. These provisions, it is said, are not germane to the title of the act. The purpose of the constitutional provision is accomplished when a law has but one general subject which is fairly indicated by its title. If the general subject indicated by the title reasonably covers the provisions of the act and is not calculated to mislead the General Assembly or the people it is a sufficient compliance with the constitutional requirement. Unless the act contains matters which have no proper connection with or relation to the title, or the title itself contains subjects without any proper relation to each other, the constitutional provision is not violated. The General Assembly must determine for itself how broad and comprehensive the object of the statute shall be and how much particularity shall be employed in the title defining it. An act with a single general subject, indicated in the title, may contain many provisions, however diverse, so long

as they are not inconsistent with or foreign to the general subject, and may be considered in furtherance of such subject by providing for the method and means of carrying out the general object. (*People* v. *Nelson,* 133 Ill. 565; *People* v. *McBride,* 234 id. 146; *Manaster* v. *Kioebge,* 257 id. 431; *Perkins* v. *Board of County Comrs.* 271 id. 449; *Public Service Co.* v. *Recktenwald,* 290 id. 314.) The punishment of judges and clerks of election for misbehavior in the conduct of an election ·is certainly germane to the object and purpose of an act regulating the holding of elections. Provisions making such judges and clerks officers of the court and subjecting them to proceedings for contempt for misconduct in the discharge of their official duties tend to make the act effective and are within the scope of its title. The proper and honest conduct of elections is a most important function of free government. Violations of the election laws must be dealt with promptly, and the General Assembly sought to promote the purity of elections by the enactment of the provisions in question.

It is finally argued by respondents that section 13 of article 2 of the City Election act fails to define misbehavior in office; that the section is void because the General Assembly has no power to declare an act to be a contempt of court which has no relation to the administration of courts of justice or which is not a contempt of court in fact; and that the City Election act is discriminatory because officers of election in the city of Chicago are subject to punishment for contempt by the county court of Cook county, while officers of the same election in those portions of Cook county not subject to the act escape such punishment. Contentions similar in character have been determined adversely to respondents in *Sherman* v. *People, supra, People* v. *Hoffman,* 116 Ill. 587, and *People* v. *Gordon,* 274 id. 462.

The writ will be awarded.      *Writ awarded.*