# The People of the State of Illinois ex rel. Joseph Thoney, Defendant in Error, v. Edward Sylvester et al., Plaintiffs in Error.

## Gen. No. 30,830.

1. ELECTIONS—*findings in contempt proceeding against election officers as basis for conviction when inapplicable to all respondents alike.* Under Cahill's St. ch. 46, ¶ 267, allowing summary trial of election officials for contempt, conviction of one election judge should stand though only part of the findings applied to him.

2. ELECTIONS—*discharge of one respondent in contempt proceedings against election officers as affecting rights of others.* Under Cahill's St. ch. 46, ¶ 267, allowing summary trial of election officials, discharge of one election judge respondent will not affect rights of the other respondents.

3. ELECTIONS—*poll books, etc., as evidence in summary proceedings against election judge.* Under Cahill's St. ch. 46, ¶ 267, poll books and registers are competent against an election judge respondent although some of the entries were made when he was not present.

4. HARMLESS AND PREJUDICIAL ERROR—*permitting witness to testify as to facts shown by books in evidence.* Where election poll books showing illegal duplications were in evidence permitting a witness to state what he found therein by way of duplication, if error, was harmless.

5. ELECTIONS—*sworn answer of accused officials as basis for discharge in contempt proceedings.* Under Cahill's St. ch. 46, ¶ 267, for summary trial of election officials, respondents merely by a sworn answer cannot be purged of contempt and discharged, as at common law.

6. ELECTIONS—*legislature's power to enact provision for summary trial of election officers.* The legislature had constitutional power to pass the City Election Law, Cahill's St. ch. 46, ¶ 267, giving right for summary trial of election officials.

7. ELECTIONS—*denial of jury trial as affecting validity of provision for summary proceedings against election officials.* Under Cahill's St. ch. 46, ¶ 267, providing a summary contempt proceeding for election frauds, due to distinction between contempt and criminal proceedings, denial of jury trial therein is constitutional.

8. ELECTIONS—*necessity for conduct of summary proceedings against election officials by State's attorney.* Under Cahill's St. ch. 46, ¶ 267, providing summary contempt proceedings for election

frauds, the action is not for crime so the State's attorney is not required to commence the action.

9. ELECTIONS—*imprisonment as penalty on conviction of election fraud under statute authorizing summary proceedings.* Under Cahill's St. ch. 46, ¶ 267, providing summary contempt proceedings for election fraud, the court may punish such contempt by imprisonment.

Error by defendants to the County Court of Cook county; the Hon. EDMUND K. JARECKI, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1926. Affirmed as to two and reversed as to one of plaintiffs in error. Opinion filed December 21, 1926. Rehearing denied January 4, 1927.

HENRY A. BERGER and JOHN F. HIGGINS, for plaintiffs in error.

ROBERT E. CROWE, State's Attorney, for defendant in error; JOSEPH B. FLEMING, Special Assistant State's Attorney, and HENRY T. CHACE, JR., Assistant State's Attorney, of counsel.

MR. JUSTICE BARNES delivered the opinion of the court.

Plaintiffs in error, Sylvester and Menet, were judges, and Carpino, a clerk of election, and acted as such at a general aldermanic election held in the city of Chicago, February 24, 1925.

Upon a proceeding based on section 13 of Article II of the City Election Act (Cahill's St. ch. 46, ¶ 267) said plaintiffs in error were adjudged guilty of contempt of the county court and ordered committed to the county jail for six months each. This writ seeks a review and reversal of that order.

On a petition by relator setting forth substantially that while acting as such officers, respectively, plaintiffs in error and Martha Soreng, a third judge, and Esther Datillo, the other clerk, were guilty of certain specific acts of misconduct and misbehavior, a rule to show cause was entered, and respondents filed a

joint and several sworn answer specifically denying commission of the acts charged on which they moved for their discharge.  The motion was overruled, and over their objections the court proceeded to a hearing and refused a trial by jury.  After a hearing had on oral and documentary evidence, including testimony of respondents in their own behalf, the court entered the order aforesaid, finding that respondents, Mrs. Soreng and Esther Datillo, had purged themselves of contempt, but that plaintiffs in error, Sylvester, Menet and Carpino, wilfully neglected their duty, kept a false poll list, unlawfully inserted and permitted to be inserted false statements and names of persons who did not appear at the polling place to vote, knowingly and wilfully permitted to be deposited during the election 10 packages of ballots containing 10 ballots each in the ballot box not offered by registered voters, permitted the insertion in the poll list of the names of 100 or more persons who did not appear at said polling place, and wrongfully received votes twice in the name of the same registered voter and recorded them as voting twice in 15 different instances.

It is urged that the evidence does not show guilt beyond a reasonable doubt, the charge being criminal in its nature.

That all these things took place is established by incontrovertible proof, and that there was a conspiracy to place a hundred or more unvoted and illegal ballots in the box is inferable and palpable from the very circumstances proven.

Bearing on such conspiracy are the following significant facts: Czarnecki, one of the election commissioners, visited the polling place about 10:30 o'clock in the forenoon.  At that time the clerk, Datillo, and Mrs. Soreng, the third judge, were absent and there had been recorded as voting 125 persons whose names appeared on the first 125 numbered lines of the poll books (except that three of the names had not been

entered in one of them), both being kept at that time by Carpino in the absence of Datillo, who entered the names up to line 103 before she left for luncheon. On inspection of Carpino's poll book Czarnecki found names written in from line 199 to 301, inclusive, evidently copied directly from the poll list, for they were inserted in the poll book in the exact order of the numbers of the street residences of such persons as they appear on the register or poll list. The lines of the poll books between line 125 and line 199 were blank. The commissioner forbade further use of that book and asked plaintiffs in error for an explanation of these insertions but received none. At that time complaints of "stuffing the ballot box" were openly made to Czarnecki in the presence of those officials.

At the hearing all of respondents disclaimed knowledge of the insertion of the 103 names in Carpino's poll book before the fact was called to their attention by Czarnecki. The entries were not in the handwriting of either of the clerks. It is apparent, however, that whoever inserted these names did so to account for fraudulent unvoted ballots found in the box in excess of the actual number of votes that were placed therein, 100 of which were in 10 packages, each containing 10 ballots folded together, and that whoever placed them in the box was cognizant of the fraudulent entries in the poll book. If these packages were in the ballot box on the opening of the polls and permitted to remain there, or the officials neglected their statutory duty under section 51 of the Election Act [Cahill's St. ch. 46, ¶ 431] of seeing that no ballot was then in the box, the officials present would be chargeable with official misconduct or neglect of duty. Carpino only appears to have been present at that time. But there is sufficient circumstantial evidence that these ballots were placed in the box during voting hours with unquestionable connivance of two of the judges in charge of the box. Direct proof in such a

case, except by confession of one of the guilty parties, is rarely obtainable. But the circumstantial evidence is strong and convincing.

It is undisputed that Menet opened the ballot box during the absence of the two women officials and before the arrival of Czarnecki. When he did so Sylvester was standing by the box and the ballots fell out on the floor and were picked up by Menet and put back in the ballot box. The dropping of the ballots was evidently a ruse to conceal from others their placing with them in the box these bundles of fraudulent ballots, for this was the only time the ballot box was opened before 4 p. m., and Mrs. Soreng testified that she saw no occasion any time during the day to open the ballot box to push back the ballots, the only explanation offered for opening it. It is significant that Menet and Sylvester had no reasonable explanation to offer for these fraudulent ballots, and when the latter was asked for an explanation at the trial his answers were very evasive. These 100 ballots and the 103 fraudulent entries are so inextricably connected as to point conclusively to a conspiracy and fraudulent scheme to stuff the ballot box with unvoted ballots which could not have been placed in the box in such bundles without the connivance of some of the judges, and the circumstances point beyond reasonable doubt to the guilt of Menet and Sylvester.

But the proof as to the clerk Carpino is less certain. He denied knowledge of the insertion of the 103 names in his poll book, and the names were not in his handwriting. There is no direct proof of the handwriting or when they were written in. They may have been written in before he received the book or when he stepped out into a kitchen back of the polling place for about 20 minutes. He was inexperienced, poorly educated, and probably careless, and while his participation in the conspiracy may be suspected it is not sufficiently proven.

There were 15 different instances of persons recorded as having voted twice. But it is urged that Menet could not have known of them because the duplications occurred after his discharge. But granting this, the order of conviction against him would stand on the other findings. It is not necessary to the sustaining of the order that he be guilty of all the court's findings. Sylvester, however, was there all of the time. It was his duty to check the names of the voters from the register as they voted, and as said in *Sherman v. People*, 210 Ill. 552, where there were eleven similar instances, "it certainly could not be said that it was done so many times through mere mistake or inadvertence."

It is argued that Mrs. Soreng's discharge is inconsistent with the guilt of the other judges. Whether so or not we are not called on to reconcile the court's findings as to her. But under the proven circumstances the conspiracy could hardly have been accomplished without the connivance of the other two judges.

Because Menet was not present when some or all of the duplications aforesaid took place, error is charged in admitting the poll books and the registers as to him. What they showed as occurring prior to the time he was discharged is not questioned. They were relevant for that purpose, and his conviction stands on what occurred before his discharge.

The point that one of the witnesses was improperly permitted to state what he found by way of duplication of names in the poll books is purely technical as the books themselves were in evidence and showed the duplications.

It is urged that respondents were purged of contempt on their sworn answer, and should have been discharged, and counsel cite in that connection *People v. Seymour*, 272 Ill. 295; *People v. Severinghaus*, 313 Ill. 468; *Sherman v. People*, 210 Ill. 552, and other cases. But what was said on that subject in these

cases related to constructive criminal contempts and the rule of procedure at common law whereby in such cases one may be purged of contempt by his sworn answer denying the charges. This case, however, does not involve a contempt existing at common law but one created by statute. Said rule is not questioned, nor is the power of the legislature to change it. Said statute provides that judges and clerks of election are officers of the county court "and shall be liable in a proceeding for contempt for any misbehavior in their office, to be tried in open court on oral testimony in a summary way, without formal pleadings." (Section 13, Art. II, City Election Act of 1885; Cahill's St. ch. 46, ¶ 267.) This provision has been held constitutional. (*Sherman v. People,* 210 Ill. 552; *People ex rel. Broomell v. Hoffman,* 322 Ill. 174.) Discussing the same in the *Sherman* case the court said:

"It is next insisted by plaintiffs in error that the statute authorizing the court to proceed to hear the case without an affidavit or formal statement in writing as to the nature of the charge or accusation—in fact, without formal pleadings and upon oral testimony, in a summary manner—is unconstitutional, as it deprives the defendants of their liberty without due process of law. We do not see how this contention can be sustained."

The court held that it was the intention of the act that proceedings under it should be "summary, vigorous and effective"; that the said provisions were enacted evidently for the purpose of preventing the delays formal proceedings required; that there is nothing in the act to prevent parties to such proceedings from having all of their rights under the law; that under them they could have a full and impartial hearing and the fullest opportunity of offering evidence in their own defense, and would still have the right of appeal to correct any errors committed, and that the act did

not deprive them of liberty without due process of law.

That the legislature intended to abolish the common-law rule in this class of contempts can hardly be doubted from the language of the statute which expressly provides· for a trial "in open court on oral testimony in a summary manner without formal pleadings." It is obviously inconsistent and would defeat the purpose of the statute to hold that the hearing thus contemplated may nevertheless be frustrated and prevented by respondents filing a pleading or sworn answer.

In *Drady v. District Court of Polk County*, 126 Iowa 345, 102 N. W. 115, the court held that a statute prescribing the course of procedure to be followed in contempt cases was a constructive repeal of the common law on the subject and within the power of the legislature to enact, saying that while it provided for a written explanation to be filed by the accused, it did not say that if the same were in effect a denial it would operate to preclude any further inquiry on the part of the court. In *State ex rel. Lanning v. Lonsdale*, 48 Wis. 348, 4 N. W. 390, the court held that whenever a statute prescribes the procedure in a prosecution for contempt, or limits the penalty, the statute controls. Like rulings in other jurisdictions have been made in construing similar statutes. (*Herald-Republican Pub. Co. v. Lewis*, 42 Utah 188, 129 Pac. 624; *In re Buckley*, 69 Cal. 1, 10 Pac. 69.) In *State v. Froelich*, 316 Ill. 77, discussing the provision in section 25 [Cahill's St. ch. 43, ¶ 26] of the Prohibition Act (Laws of 1921, p. 692) for a trial on affidavits or oral examination in contempts for the violation of any injunction granted pursuant to said act, the court held that the plaintiff in error could not merely by his sworn answer purge himself of the contempt and be discharged, and that the practice authorized by that statute conforms to the practice in

chancery to punish for civil contempts. We think the same may be said with respect to the provisions of the statute in question, and that plaintiffs in error could not properly be discharged on their answer.

It is further urged that if one is not purged by a sworn answer in such a proceeding he is nevertheless entitled to a trial by jury. This same contention was made before the Supreme Court in *People ex rel. Broomell v. Hoffman,* 322 Ill. 174. That was an original petition for mandamus for a writ to compel the sheriff of Cook county to execute an order of the county court committing to jail certain judges and clerks of election for contempt in a like proceeding to the one at bar. The respondents had been discharged from custody by a writ of habeas corpus. In their petition therefor they set up among other grounds for their release that they had purged themselves by their sworn answers in the contempt case and were denied a trial by jury therein. These contentions were treated as an answer to the petition for mandamus, thus presenting before the Supreme Court the same points urged here. Nevertheless the writ was awarded. It is improbable that it would have been had the claim of either purger or denial of right to trial by jury been well founded. While the court did not specifically discuss these points, others having been stressed before the court, we deem that case binding on us on all controverted questions raised therein bearing on the validity of the summary proceeding, thus rendering further discussion of the point unnecessary. We might add, however, that it was said in *People v. Panchire,* 311 Ill. 622: "A contempt proceeding is *sui generis* and may be considered as of the nature of a misdemeanor, but differs from it in that it is not indictable but punishable summarily. No court has ever held that a party is entitled to a trial by jury in a proceeding for contempt in the absence of a statute so providing."

The court there drew a distinction between contempts and criminal offenses, and said that while the courts would be compelled to try the latter by jury they had always held in this State that the right to a trial by jury is not violated in a contempt proceeding (pp. 628-629).

It is next urged that, the contempt being criminal in its nature, the action should have been brought by the State's attorney. The distinction made between a contempt and a criminal offense in the *Panchire* case sufficiently answers this contention.

It is finally urged that the court was without power to punish by imprisonment. As the court in the *Hoffman* case practically upheld an imprisonment for the same period of time in a like case the contention is untenable.

Finding no error in the proceeding as to Sylvester and Menet we think the order as to them should be affirmed. But for the reasons stated it will be reversed as to Carpino.

*Affirmed as to two and reversed as to one of plaintiffs in error.*

GRIDLEY, P. J., and FITCH, J., concur.