The People of the State of Illinois ex rel. John S. Rusch, Defendant in Error, v. Louis Greenzeit et al., Respondents. Louis Greenzeit, Plaintiff in Error.

Gen. No. 37,260.

480

Opinion filed November 27, 1934.

SIMON HERR, for plaintiff in error.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; JOHN F. CASHEN, JR., Assistant Attorney to Board of Election Commissioners, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

There was filed, in the county court of Cook county, by John S. Rusch, chief clerk of the board of election commissioners of the city of Chicago, a petition, against Louis Greenzeit, Anna Broude, Rose Wattenberg, Donald Schwartz and Sol Berke, which recites that on November 8, 1932, a general election was held in Chicago at which various candidates of different political parties were voted upon; that respondents served as judges or clerks of election at that election in the 19th precinct of the 24th ward; "that certain misconduct and misbehavior which is hereinafter alleged of the said respondents as such judges and clerks of said election at and during said election constitutes a criminal offense or criminal offenses against the People of the State of Illinois, and also constitutes contempt or contempts of this Honorable Court''; "(1) That said respondents, while serving and acting as judges and clerks of said election in said precinct, did fraudulently and unlawfully make a false canvass, tally, proclamation and return of the votes cast in said precinct at said election; (2) That said respondents,

while serving and acting as judges and clerks of said election in said precinct, were guilty of corrupt and fraudulent conduct and practice in the duty of said respondents as judges and clerks of said election.'' The petition avers that at said election there were 24 candidates for the office of associate judge of the municipal court of Chicago, of which number 12 were to be elected. The petition then sets forth, in detail, the canvass, tally and return made by the judges and clerks as to each individual candidate for said office, and the actual number of votes received by each of the candidates, and avers ''that the discrepancies between the returns of the respondents and the actual votes cast for each of the candidates for Associate Judge of the Municipal Court of Chicago was caused through the fraudulent, corrupt and unlawful acts of the respondents herein.'' The petition prays that a rule be entered upon respondents to show cause why they should not be held in contempt of court, and such a rule was entered. Thereafter, upon motion of petitioner, the petition was amended in respect to the actual number of votes cast for the various candidates. Respondents ''plead not guilty.'' At the conclusion of the entire evidence the trial court found respondents Sol Berke and Donald Schwartz, clerks of election, not guilty. Respondent Louis Greenzeit, plaintiff in error, was ''adjudged guilty of contempt of the County Court of Cook County, State of Illinois,'' and was sentenced to the county jail for the period of 60 days. Respondents Rose Wattenberg and Anna Broude were also adjudged guilty of contempt and were each sentenced to pay a fine of $150 and costs. Greenzeit, alone, has sued out this writ of error.

After the election in question there was an election contest case entitled *Heller v. Hasten,* conducted before Judge Mangan, which involved a recount of the ballots cast in the precinct in question for associate judges of the municipal court of Chicago. The figures

shown by the recount, the tally sheets returned by the judges and clerks of election in said precinct, also the poll books, were admitted in evidence by stipulation. The official returns made by the said judges and clerks of election for the candidates for associate judge of the municipal court of Chicago, and the actual votes received by said candidates, as shown by the recount, are as follows:

| Candidates | Official returns made by judges and clerks of election | Actual votes received as shown by recount |
|---|---|---|
| Rooney | 356 | 343 |
| Dunne | 335 | 330 |
| Bicek | 323 | 316 |
| McGarry | 303 | 297 |
| Hayes | 336 | 329 |
| Kasper | 368 | 352 |
| Bonelli | 357 | 350 |
| Urbanski | 346 | 330 |
| Holland | 311 | 306 |
| Gutknecht | 360 | 355 |
| Smith | 327 | 320 |
| Hasten | 324 | 328 |
| Trude | 32 | 31 |
| Casey | 70 | 71 |
| Heller | 85 | 82 |
| Sbarbaro | 91 | 133 . |
| Holmes | 15 | 15 |
| Eberhardt | 18 | 18 |
| Fairbanks | 44 | 44 |
| McMillan | 12 | 11 |
| Schulman | 198 | 199 |
| Fetzer | 26 | 23 |
| Fisher | 30 | 31 |
| Haas | 31 | 30 |

Three contentions are raised by plaintiff in error. The major ones are: (1) "The finding and judgment of the court is contrary to the weight of the evidence";

and (2) "The burden of proof is on the petitioner to establish the guilt of the respondent beyond a reasonable doubt."

As to contention (2): Section 13, par. 267, ch. 46, Cahill's Ill. Rev. St. 1933, provides in part:

"Upon the confirmation of such judges and clerks, at any time, a commission shall issue to each of such judges and clerks, under the seal of such court, and appropriate forms shall be prepared by said board of commissioners for such purpose. And after confirmation and acceptance of such commission, such judges and clerks shall thereupon become officers of such court and shall be liable in a proceeding for contempt for any misbehavior in their office, to be tried in open court on oral testimony in a summary way, without formal pleadings, but such trial or punishment for contempt of court shall not be any bar to any proceedings against such officers, criminally, for any violation of this act."

" 'That the legislature intended to abolish the common-law rule in this class of contempts can hardly be doubted from the language of the statute which expressly provides for a trial "in open court on oral testimony in a summary manner without formal pleadings." ' (*People v. Sylvester*, 242 Ill. App. 565, 571–2, and cases therein cited.) . . . The distinction between a contempt and a criminal offense is clearly pointed out in the case of *People v. Panchire*, 311 Ill. 622. The instant contempt charge is a purely statutory proceeding. When the plaintiff in error became a judge of election he thereby became an officer of the county court, and the power to punish for contempt an election official for misbehavior in office is vested in the county court by section 13." (*People ex rel. Rusch v. Johnson*, 255 Ill. App. 288, 291–2. See also *People v. White*, 334 Ill. 465, where the section in question and its purposes are passed upon.)

"While contempts are generally spoken of as offenses, yet by the greater weight of authority and better reasoning they are in reality *sui generis,*—they are *quasi* crimes or offenses." (*People v. Panchire,* 311 Ill. 622, 629.)

In this State, in a proceeding for criminal contempt, if the party purges himself of the alleged contempt by his answer he is discharged, and it would be improper for the court to allow a traverse of the answer, or for the court to hear evidence touching the charge. Under section 13 a proceeding for contempt does not involve a criminal contempt as that term was understood at common law. (See *People v. White, supra,* p. 485.) The county court, at common law, had no jurisdiction to punish judges and clerks for misbehavior in office, but it obtained such jurisdiction from the City Election Act. That act does not provide or contemplate, in our judgment, that a petitioner would have to prove "misbehavior" of an election official beyond a reasonable doubt, and the mere fact that the petition contains allegations *(inter alia)* that amount to a charge of an act or acts of a criminal nature does not cast upon the petitioner the burden of proving the respondents guilty beyond a reasonable doubt. In *People ex rel. Rusch v. Rivlin,* 277 Ill. App. 183, we held, in a like case, that the petitioner was not required to prove the guilt of a respondent beyond a reasonable doubt. The power to punish an election official for contempt for "misbehavior," even though such misbehavior involves an act or acts of a criminal character, is vested in the county court, by section 13, but such a proceeding would not prevent a prosecution, under the Criminal Code, of the official for such act or acts. From what we have said, however, we must not be understood as holding that petitioner did not prove plaintiff in error guilty of misbehavior beyond a reasonable doubt.

In determining contention (1), that the finding and judgment of the court are contrary to the weight of the evidence, we have carefully considered the evidence and have reached the conclusion that we would not be warranted in sustaining that contention. Plaintiff in error argues that the clerks may not have correctly tallied the votes as they were called by the judges, and that if such was the fact the judges might not have been able to detect the incorrect tallying. But plaintiff in error admits that respondent Berke, one of the clerks, testified "that the tally sheets kept by him correctly represent the votes as they were called to him by the judges who were doing the calling. That they include nothing more nor less than was called by the judges," and further admits that respondent Schwartz, the other clerk, testified "that he did not at any time fail to tally a vote for any candidate for whom a vote had been called by any judge, nor did he, at any time, give a vote to any candidate other than as it was called by any judge." That the two clerks so testified is borne out by the record. The trial court saw the two witnesses and heard their testimony, and it appears that he believed their testimony, because he found them both not guilty at the conclusion of the evidence. Plaintiff in error had served five times as a judge of election prior to the election of November 8, 1932, and he admitted that he understood the nature of his duties under the City Election Act.

Plaintiff in error argues that when the official returns are compared with the figures shown by the recount there appear only such differences as might be the result of honest mistakes. Eleven of the twelve Democratic candidates were given a greater number of votes than they actually received, while all of the Republican candidates, save one, were given substantially the number of votes they actually received. One of the Republican candidates, Judge Sbarbaro,

actually received 133 votes, but the official return credits him with only 91 votes. The trial court might well have found, from a study of the official returns and the recount, that there was a scheme to benefit eleven of the Democratic candidates and that the twelfth Democratic candidate was given less votes than he actually received in order to help Schulman, a Republican candidate, who was a resident of the ward in which the precinct in question was located. In support of his contention that the discrepancies in the official return and the recount should be regarded as honest mistakes, plaintiff in error argues that if there had been any purpose to steal votes for the Democratic judicial candidates, a greater number of votes would have been stolen. This sort of argument, if followed, would excuse all false returns made by election officials provided the discrepancies were not too great. If the county court, in proceedings like the present, were to follow the line of argument here made, important and wholesome provisions of the City Election law would be emasculated, to say the least. And if certain arguments of plaintiff in error were sound, an election official could not be punished, under section 13, for "misbehavior" where the evidence shows gross carelessness in the performance of his duties, but not criminal intent. Such an interpretation of the law is, of course, unwarranted. Under section 13 the court undoubtedly has the power, in a proper case, to punish an election official for carelessness in the performance of his duties. By the recount Rooney lost 13 votes, Kasper and Urbanski 16 each, Dunne, Holland and Gutknecht, 5 each, McGarry, 6, Bicek, Bonelli, Hayes and Smith 7 each, and Sbarbaro, a Republican, gained 42 votes. None of the election officials was able to give any explanation as to why Sbarbaro was given 42 votes less than he received.

The City Election Act, sec. 10, ch. 46, art. IV, Cahill's 1933 St., provides, in reference to the manner

of counting "split tickets" and "scratch tickets," as follows:

" . . . They shall be canvassed separately by one of the judges sitting between the two other judges, which judge shall call each name to the poll clerks, and the office for which it is designated, and the other judges looking at the ballot at the same time, and the poll clerks making tally of the same. When all of the ballots have been canvassed in this manner, the poll clerks shall compare their tallies together and ascertain the total number of votes received by each candidate, and when they agree upon the numbers one of them shall announce in a loud voice to the judges the number of votes received by each candidate on each of the kinds of ballots containing his name, the number received by him on the split and scratch tickets, and the total number of votes received by him."

Plaintiff in error testified that all of the judges took turns in calling the ballots. He was asked the following question: "Q. And as you called them, do you know whether or what the other judges were doing? A. Why, yes, as I was turning one ballot they were sorting them, that is, putting them in a pile and making themselves generally useful." Plaintiff in error concedes that the judges, in counting the ballots, did not comply with the provisions of section 10 and we cannot agree with the argument that such violation was inconsequential and could not be made the basis of a charge of misbehavior. A violation of section 10 by judges of election strongly tends to bring about mistakes and frauds that the section seeks to prevent. Plaintiff in error testified that there were several methods used in counting the ballots. "First we went down the line on the ballot, calling each individual candidate, and after we had gone for perhaps an hour or so, somebody made a suggestion that we would be there all night if we didn't speed things up and try another method, that is by grouping several candi-

dates. After we went at it in that way we switched back to the first method, and that is how it went on.'' The City Election Act places the responsibility for the conduct of the election, the canvass of the votes and the return of the votes cast, upon the judges. The clerks are not permitted to handle the ballots, nor are they permitted to count the ballots. They act merely as clerks and have no supervision over the election.

Plaintiff in error testified, in substance, as follows: That he was 31 years of age; that for six years he engaged in the military and naval service of the United States; that he had been married for 15 years; that he had never previously been charged with any violation of any law; that he belonged to no political organization; that for about 18 months prior to November 8, 1932, he was not steadily employed; that he and the other judges opened the boxes and sorted and piled the ballots; that they sorted the ballots into presidential, emergency relief, the proposition and the judicial ballots; that the judges took turns in calling the votes; that when he called the votes he called them as he saw them and that while he was calling the votes the other judges were sorting them, putting them in piles and making themselves generally useful; that he had no interest in the election other than to see that each of the candidates received an honest count of the votes cast; that no person requested him to favor or disfavor any particular candidate and that he had no desire to do so; that he could account for the discrepancy in the vote of Judge Sbarbaro only on the theory that the election officials were tired; that two methods were used in counting the ballots; that the first method was the usual one, namely, going down the line of the ballots, calling each individual candidate, and, after proceeding in that manner for approximately one hour someone made the suggestion that they would be there all night if they did not speed things up and that they then tried another method,

that of grouping several candidates together, and, after they had continued with this method for a short while they went back to the first one; that in calling the votes his entire attention was devoted to seeing that he called the votes correctly, that, occasionally, he would glance down to see whether they were tallying, but that from where he was stationed he could not see with certainty, as the table was about six feet long; that he did no tallying himself and from personal memory could not give the exact number of straight ballots that were called and he would have to rely upon the tally sheets for such information; that he attended a conference between all of the respondents and their attorney the evening before he testified. Upon cross-examination he stated that he had served at five prior elections and obtained his position at all six elections through the precinct captain; that he believed he counted some of the straight Democratic ballots but did not know how many; that if the tally sheets show there were 197 straight Democratic ballots counted that must have been what was called; that he did not remember whether he alone counted the 197 straight ballots; that he could not recollect who sorted the judicial ballots in the piles of straights and splits; that it was his recollection that he counted all of the straight judicial ballots; that he paid attention to the clerks, but because the table was long, and watchers and policemen crowded about it, he could not supervise the clerks closely; that he counted some of the split judicial ballots; that he could not account for the difference between the official returns and the recount returns except that they must have committed an error; that "an error might have been made in calling just as easily as in tallying"; that he understood that after he had finished counting the straight ballots that it was his duty to see that the clerks put the number down correctly; that he also knew that it was his duty as a judge of election to supervise the

clerks as well as to take charge of the election in the precinct; that he knew that he could order any of the watchers and policemen who crowded around the table away from such position, but "at the time I did not feel there was any necessity of ordering anybody out."

Counsel for plaintiff in error argue that "the record in this case is entirely barren of any circumstances which would tend either directly or inferentially to point the finger of accusation at any one of the respondents as having fraudulently, corruptly or willfully caused a false canvass, tally and return to be made. The only evidence with respect to the error would indicate that the error was an honest one." We cannot agree with this contention, nor can we agree with the further contention that the "misbehavior" referred to in section 13 necessarily involves an act or acts of a criminal character. Under section 13 the trial court had the right and power to find plaintiff in error guilty of misbehavior, even though he did not find that the "misbehavior" involved an act or acts of a criminal character. However, as we have heretofore stated, we think that the trial court was justified in finding that the plaintiff in error "knowingly and fraudulently and unlawfully made a false canvass and return of the votes cast in said precinct at said election."

The third contention of plaintiff in error is that "the judgment order is void in that it fails to recite that the respondents were present in open court at the time of the entry of said judgment order." There is not the slightest merit in the contention. To quote from the commencement of the judgment order: "This cause coming on to be heard upon the rule or order to show cause heretofore entered against the above named respondents and each of them the oral answer to said rule or order by the respondents Louis Greenzeit, Anna Broude and Rose Wattenberg, and each of

them now appearing personally in Court and by their Counsel, and the evidence of the respective parties presented in open Court, and the Court, having heard the arguments of counsel and being fully advised in the premises, doth find: . . ."

The judgment of the county court of Cook county is affirmed.

*Affirmed.*

GRIDLEY, P. J., and SULLIVAN, J., concur.