The People of the State of Illinois ex rel. John S. Rusch, Defendant in Error, v. Frank Kotwas et al., Plaintiffs in Error.

Gen. No. 37,334.

Opinion filed June 11, 1934.

NASH & AHERN and SIDNEY H. BLOCK, for plaintiffs in error; MICHAEL J. AHERN and SIDNEY H. BLOCK, of counsel.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; JOHN F. CASHEN, JR., Assistant Attorney to Board of Election Commissioners, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

November 8, 1932, the national election was held, and at the same time judges of the municipal court of Chicago were elected. At that election Frank Kotwas, John Basner, Frank J. Nies, Walter J. Ziober and Stephen L. Banasiak were judges and clerks of election of the first precinct of the thirteenth ward in Chicago. Afterward there was a contest involving the election of one of the judges of the municipal court. The ballots were counted and it was contended that the result showed irregularities and misconduct on the part of the judges and clerks of the precinct in question.

September 28, 1933, John S. Rusch, chief clerk of the board of election commissioners of Chicago, filed a petition against the judges and clerks of the first

precinct of the thirteenth ward and they were ruled to show why they should not be adjudged guilty of contempt of court for misbehavior in their respective offices, at such election. There was a hearing in the county court of Cook county; the petition was dismissed as to Stephen L. Banasiak, and the other respondents were adjudged guilty of contempt of court. Frank Kotwas, John Basner and Frank J. Nies were each sentenced to imprisonment in the county jail for a term of six months, and the respondent Walter J. Ziober was sentenced to imprisonment in the county jail for one year. The respondents Kotwas, Basner and Nies prosecute this writ of error.

The poll books and tally sheets were received in evidence and the ballots were recounted in open court. Each of the five respondents testified and denied any wrongdoing in the canvass of the votes or the returns made by them.

The evidence shows that 12 judges of the municipal court were to be elected. There were 24 candidates, 12 on the Democratic ticket and 12 on the Republican ticket. The result of the canvass by the respondents showed that each of the Democrats received 359 straight votes and 43 split votes, or a total of 402 votes; that each of the 12 candidates on the Republican ticket received 55 straight votes and 20 split votes, making a total of 75 votes. On the recount of the votes before the county judge each of the Democratic candidates received 332 straight votes, while each of the Republicans received 50 straight votes. The highest candidate on the Democratic ticket received 46 split votes and the lowest 16, while on the Republican ticket the highest candidate received 35 split votes and the lowest 17. On the recount in the county court all of the Democratic candidates lost votes ranging from 23 to 53 votes, while 6 of the Republican candidates gained from 2 to 10 votes, and 6 of them lost from 3 to 8 votes.

The evidence is all to the effect that dummy sheets were used and afterward the result from these was transferred to the tally sheets and poll books. There were a number of watchers and other persons in the polling place during the canvass of the votes.

The respondent Walter J. Ziober testified in his own behalf as to how the votes were counted and, in substance, that there was no wrongdoing or misbehavior on the part of anyone. On cross-examination he was asked if he had not, on October 17, 1933, made a statement in the election commissioners' office where what he said was taken down by a court reporter in the presence of a number of witnesses. When the witness was asked if he had not talked to counsel for petitioner in the election commissioners' office, counsel for the respondent, who is not respondent's counsel in this court, said: ''Your Honor, I am going to object to any conversation with counsel outside the presence of any defendants or any of the judges and clerks or outside of the court. It is not in the presence of the court. There isn't a confession in any statement.'' The objection was overruled and the cross-examination proceeded; questions tending to impeach the witness were then put to him in an endeavor to elicit whether he had not made certain answers to certain questions put to him at that meeting. The witness denied that he was at the election commissioners' office at the time in question, and denied making most of the incriminating statements. Afterward the petitioner in rebuttal called a number of witnesses who were present at the time, including the court reporter, and their testimony is to the effect that Ziober had stated, in the election commissioners' office at the time in question, what took place during the canvass of the votes, tending clearly to show misbehavior on the part of the respondents. There is other evidence in the record, but we think it unnecessary to analyze it.

The court in deciding the case said: "I take it in all these cases that really what we are after is ballot thievery and actual fraud. . . . In several of those cases, . . . there has been nothing but that formal proof, and standing alone without any explanation the discrepancies are so glaring that the Court, without some reasonable explanation, is forced to the conclusion that either a fraud has been committed, or else the judges and clerks have just simply disregarded their duties and have said, 'Well, put down any figures and let us get out of here,' in which case I feel that they have committed an actual fraud. . . .

"Now, let us take the present case. Judged by those sort of general standards that I have laid, here is a discrepancy in the judicial count and the returns I think you will admit with me are peculiar, different than are found in any other case in that the Democratic candidates on this judicial ballot all received the same number of votes, 402.

"Now you have the outside testimony here, I mean the outside evidence, that convinced the Court a long time before the case was concluded as to what his finding would probably be. You have the confession here of one of them (Ziober). . . . A confession . . . made sometime . . . in October, in which he detailed or in which he admitted some of the fraud that had been committed, and he says that one of the judges or one of the clerks openly there, at the board, made an objection to a certain precinct captain coming in and pencilling or marking blank ballots . . . one of the clerks calling to the attention of the judge that those men were marking ballots and the tally sheet itself, I think bears out this, that when he said there was a dispute between the two precinct captains as to who should get the benefit of the split ballots, I think the tally sheet, which is the first one I have seen in that condition, bears out the Court's conclusion that they did arrive at some figure and split it up and

said, 'You will get so many splits and the Republicans will get so many splits.' . . . From the statement that Mr. Ziober made before the Board of Election Commissioners and the conversation of Mr. Kotwas, it does seem that the tally sheet and everything absolutely confirms the picture that he gave of the whole situation. . . . I don't think these men that have taken the stand (the men called on in rebuttal by the petitioner) and said he (Ziober) was there in the Election Commissioners' Board room perjured themselves, but he did make that statement and in it the argument between the precinct captains, how they were to be divided, and the tally sheets show here, it looks as though they set a certain figure. . . .

"I haven't any hesitancy about it. If there was no outside evidence here at all and there was just the discrepancies and they could offer a reasonable, plausible explanation, it always remains, were they all in on this, did the judges put it over or did the clerks? . . . but where there is outside evidence and all the circumstances in this case, I don't hesitate, and I won't hesitate in meting out what punishment I think is proper where the Court is sure in his own mind that an actual fraud has been perpetrated." The court then made a finding of guilty and imposed the sentences as above stated.

Counsel for the three respondents who prosecute this writ of error contend that "Mere proof of a discrepancy between the count of the judges and clerks and the recount is not sufficient to sustain a finding of guilty. The burden of proof is on the petitioner to show the guilt of the respondents beyond a reasonable doubt." Whether the discrepancy between the return made by the judges and clerks and the recount of the ballots is so great as to warrant a finding of misbehavior on the part of the judges and clerks in the instant case, we think was a question of fact for the court. Here each of the 12 candidates on the Demo-

cratic ticket received 402 votes and each of the Republicans 75 votes, while the recount of the ballots, in open court, shows each of the Democratic candidates received a different number of votes running from 329 to 349 votes, while the Republican candidates, instead of each receiving 75 votes as indicated by the return of the judges and clerks of election, received from 67 to 85 votes. Six of the candidates received more votes than they were entitled to, while six of them received less votes than they were entitled to. This alone is sufficient to show that the respondents did not count the ballots and that they violated their sworn duty.

In a contempt case of this kind, we think the petitioner is not required to prove the guilt of respondents beyond a reasonable doubt, but is required to produce "most convincing evidence of the truth of the charge" before the respondents could be found guilty, the proceeding being *quasi* criminal. *Oehler v. Levy,* 168 Ill. App. 41. The respondents' contention that "The cases of the respondents should have been considered separately and independent of each other," we think is sound, but we are also of the opinion that the court did consider the case of each before he found the respondents guilty and imposed sentence accordingly. Obviously, no one should be found guilty unless the evidence showed he was guilty as charged.

A further contention is made that the court considered incompetent evidence in determining the respondents' guilt and improper matters of aggravation in assessing the punishment, (1) that there was no competent evidence as to the official canvass and return of the judges and clerks of the votes cast; (2) that the court improperly admitted the tally sheets in evidence; (3) there was no competent evidence to show the result of the recount before Judge Mangan in the election contest; and (4) that the statement or confession of Ziober made out of the presence of the

other respondents was improperly considered as to the three respondents who procured this writ of error.

The poll books and tally sheets were admitted in evidence by stipulation of the parties. These purported to show the result of the canvass, made by the judges and clerks, of the votes cast at the election. The result of the canvass had before Judge Mangan in the election contest is in evidence but the trial court held that this was not binding on the respondents, and properly required the counting of ballots on the hearing before him. The difference between the number of votes as shown by the official recount before Judge Mangan and the recount in the instant case is trivial, and it is clear that the result of the canvass before Judge Mangan in no way affected the decision in the instant case.

The statement or confession of Ziober, as the testimony tends to show, was made in the election commissioners' office out of the presence of the other respondents and was improperly considered as to the respondents who are prosecuting this writ of error. What Ziober said at that time obviously could not be used against the other respondents. But an examination of the record clearly discloses that this rule of law was not brought to the attention of the trial judge and it is equally clear that it never occurred to counsel for either side. Counsel for the respondents say that this evidence was admitted over objection, but we think this is not borne out by the record. Nowhere was it pointed out on the hearing that this statement or confession of Ziober should have been limited to him and that it could not be considered as to the other respondents. When counsel for the petitioner was cross-examining Ziober he asked the witness if he remembered talking to counsel in the election commissioners' office. Thereupon counsel for respondents objected, as above quoted, "to any conversation with counsel outside of the presence of any defendants or any of

the judges and clerks or outside of the court. It is not in the presence of the Court. There isn't a confession in any statement.'' This objection was overruled and we think it clear that the contention now made is raised for, the first time in this court. Furthermore, a consideration of the court's oral opinion in summing up the case, from which we have rather fully quoted, leads to the conclusion that the court was satisfied of the guilt of the respondents from the fact that each candidate on the Democratic ticket received the same number of votes, viz., 402, and each candidate on the Republican ticket received 75 votes, while the recount conducted by the trial judge showed that this was clearly erroneous and that the votes were not actually counted at all.

A consideration of all the evidence we think discloses the fact that none of the judges or clerks deliberately intended to steal votes, but that out of sheer exhaustion and in an endeavor to get through they,. as the trial court said, arrived ''at some figure and split it up and said, 'You will get so many splits and the Republicans will get so many splits'—'Put down any figures and let us get out of here.' '' It must be remembered that this was a presidential election in which the ballot was large, and it was somewhere near morning after the polls closed when the municipal court ballots were reached. No complaint is made of the reasonableness of the punishment imposed, and therefore we feel we would not be warranted in disturbing the judgment on the ground that the penalty is excessive. Judges and clerks of election must understand that it is their sworn duty to honestly count the votes as cast, and their failure to do so renders them liable to the penalties of the law.

The judgment of the county court of Cook county is affirmed.

*Judgment affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.