The People of the State of Illinois ex rel. John S.
Rusch, Appellee, v. Peter Bendix et al., Appel-
lants.

Gen. No. 39,079.

Opinion filed November 30, 1936. Rehearing denied December 14, 1936.

MAX LURIE, of Chicago, for appellants; ABRAHAM
TEITELBAUM, of Chicago, of counsel.

THOMAS J. COURTNEY, State's Attorney, for appel-
lee; JOHN F. CASHEN, JR., of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the
court.

Peter Bendix, Peter Stankus and John Josephitis
were judges at a primary election held in Chicago on
April 14, 1936. They were removed as such judges
at about nine o'clock in the morning of the election
because of the manner in which it was claimed they
conducted themselves. Afterward a petition was filed
against them charging that each of them, while acting

as judge of the primary election, fraudulently and unlawfully permitted ten official Republican primary ballots and seven official Democratic primary ballots to be taken from the polling place of the 57th precinct of the 11th ward. The prayer was that they show cause why they should not be adjudged in contempt of court for such misconduct and misbehavior. Afterward they appeared in court, were represented by counsel, and the matter was heard. The court found the defendants guilty as charged, each was committed to the county jail of Cook county for a period of one year and they prosecute this appeal.

The record discloses that the three respondents were regularly appointed as judges of the primary election. The official ballots to be used at the election were delivered on the evening of April 13 to the home of the mother of respondent Peter Bendix across the street from where he lived; he there obtained the ballots which were wrapped up in two packages, one containing the Republican and the other the Democratic ballots, and took them to his home. Shortly before six o'clock the next morning the respondent John Josephitis called at Bendix's home and assisted in carrying the ballots to the polling place where the two packages were opened and the ballots counted. At about six o'clock the other respondent, Peter Stankus, arrived at the polling place and the three judges initialed about 20 or 30 ballots of each party; they said this was done because they were expecting quite a large number of persons would want to vote shortly after the polls opened. Soon after the polls opened Philip Zimmerman, who apparently was a worker at the polls and who was acquainted with respondents Stankus and Josephitis, was seen in the polling place. Shortly thereafter there was a commotion or a fight somewhere outside the polling place, when Zimmerman was arrested and taken downtown

to the Election Commissioners' office in the city hall, where 10 Republican ballots, initialed "J. J." (the initials of respondent John Josephitis) and seven Republican ballots initialed "P. S." (the initials of Peter Stankus) were found in his pocket. Shortly thereafter the three respondents were removed as judges of election. The foregoing facts are not disputed.

Respondent John Josephitis testified that he acted as judge of the primary election from six o'clock in the morning to nine o'clock in the morning; that this was the first time he had served as judge of election; that he opened the package containing the Republican ballots and counted them at the direction of respondent Bendix, and that there were 100 of such ballots; that Bendix then told him there were a lot of people outside and for him to initial 15 or 20 ballots and then to act as usher in keeping the place in order; that the ballots were initialed, then people came in to vote and he asked them to form a line; that he did not hand the ballots to the voters; that he did not see anyone give a ballot to Philip Zimmerman, but saw Zimmerman in the polling place; that the only ones who received ballots were qualified voters; "there was a commotion outside about fifteen minutes after the polls opened"; that he initialed ballots from the Republican package and the other two judges initialed Democratic ballots; that he did not know how the 17 ballots taken from Zimmerman were removed from the polling place; that he was removed as a judge at about nine o'clock the morning of the election.

Respondent Peter Bendix testified that he was by occupation a printer and served as a Republican judge at the election in question; that he arrived at the polling place at six o'clock in the morning; that one of the Democratic judges opened one package of ballots and he opened the other; that he initialed some of the ballots; that he gave out ballots to voters but did

not give any to a person who was not qualified to vote; that he did not give any ballots to Philip Zimmerman at any time; that he did not know how the 17 ballots got out of the polling place; "there was quite a lot of commotion that morning"; that he served as clerk of election in 1932; that the ballots were delivered to his mother's house across the street from where he lived the evening before the election; that he obtained them that evening; that the next morning respondent Josephitis assisted him in carrying the ballots to the polling place; that he did not see Zimmerman in the polling place that morning, that he did not know him; that a number of ballots were initialed before the voting began, because there was a crowd outside.

Respondent Peter Stankus testified that he was a bank clerk; that he was a judge of election on the day in question and arrived at the polling place about two minutes after six o'clock that morning; that the packages of ballots were opened before he got there; that he then passed out the ballots to the voters as they cast their votes; that he knew Philip Zimmerman to see him but was not intimate with him; that he did not give anybody 17 ballots at one time; that he only gave ballots to those qualified to vote; that he did not know how the 17 ballots got out of the polling place; that on the morning of the primary election he answered the telephone call from the Election commissioners; "They asked if there was a fight in the polling place and I told them there was not. . . . There was a commotion." This is the substance of all the evidence in the record.

Counsel for respondents contend that respondents "performed their duties as judges of election to the best of their ability; that they were hampered by confusion and the crowds in the polling place, and that they did not give any ballots to anybody but qualified voters"; that the judgment is not warranted by the

evidence, and in support of this say, "No evidence whatsoever was introduced by the petitioner to prove the charges made in the petition. No proof was tendered to link the respondents with Philip Zimmerman upon whose person the seventeen ballots were found. These respondents were not jobholders. They were not interested in the outcome of the primary election or in any candidate"; that before the court was warranted in finding the respondents guilty, the law requires "most convincing evidence of the truth of the charge"; that the evidence was not only not convincing, but, on the contrary, the finding of the court is against the manifest weight of the evidence. We think there is no merit in this contention. The evidence shows that each of the respondents was intelligent. Two of them had acted at primary elections as judges before. Before the voting began they opened the packages containing the ballots and initialed 20 or 30 from each package, and the excuse is that this was rendered necessary because a large number of persons were coming to the polls to vote at this time. The evidence shows that two of the respondents knew Philip Zimmerman and that he was in the polling place shortly before he was arrested. The undisputed evidence is that he was arrested outside the polling place, taken to the Election Commissioners in the city hall, at which time (about 7:30 a. m.) the 17 ballots were found in his pocket. Zimmerman was not called to testify in the instant case. The only explanation given by respondents as to what took place is, that shortly after the polls were opened there was a "commotion outside the polling place." The term, "commotion" as used conveys little or no idea of the facts. There was no fight or disturbance in the polling place.

The trial judge, who saw and heard the respondents testify, gave no credence to the version of the respondents. We think his conclusion was the only one

that could justifiably be drawn from the evidence. Certain it is that we cannot say the finding of the trial judge, who saw and heard the witnesses testify, is against the manifest weight of the evidence. The three respondents were appointed and were acting as judges of election. It was their duty to see that the ballots were not taken from the polling place and that they were given only to voters entitled to vote. Neither of the correspondents has any explanation as to how the 17 ballots, which bore the initials of two of the judges, came to be in Zimmerman's possession, outside the polling place, shortly after the polls opened.

We think the judgment of the trial judge was warranted by the law and the facts. *People ex rel. Rusch v. Kotwas,* 275 Ill. App. 406; *People ex rel. Rusch v. Greenzeit,* 277 Ill. App. 479.

Counsel for respondents further contend that the court "did not acquire jurisdiction to sentence respondents upon a petition for contempt without a rule to show cause being issued and served upon them." We think there is no merit in this contention. A verified petition was filed informing them of the charges made against them. They were in court, represented by counsel, and a hearing had on the merits. The judgment order recites that, "This cause coming on to be heard upon the rule or order to show cause heretofore entered against the above named respondents and each of them, the oral answer to said rule or order by the respondents . . . and each of them, now appearing personally in court and by their counsel," etc. We think the proceeding as shown by the record was in substantial conformity with the statute. The respondents have had a fair hearing and the judgment of the county court of Cook county is affirmed.

*Judgment affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.