**People of the State of Illinois ex rel. John S. Rusch, Appellee, v. Frank J. Kirgis et al., Appellants.**

Gen. No. 39,349.

Opinion filed November 10, 1937. Rehearing denied November 22, 1937.

SIMON HERR, of Chicago, for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and DITCHBURNE & LOUNSBURY, of Chicago, for defendant in error; THOMAS J. JOHNSON, JR., of Chicago, of counsel.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal from a judgment of conviction entered in the county court against Frank J. Kirgis,

Steve Burns and James E. Sheehan, finding them guilty of a violation of the election law and sentencing them to one year in the county jail.

The abstract shows that on February 5, 1936, a verified petition was filed in the county court of Cook county by John S. Rusch, chief clerk of the board of election commissioners of Chicago, Illinois, alleging that a general election was held in Chicago on April 16, 1935, at which election various candidates of different political parties were voted upon; that at said election in the 10th precinct in the city of Chicago Heights, Illinois, the following named persons served as judges and clerks of election, to wit: Frank J. Kirgis, Steve Burns, James E. Sheehan, Alice Parker and Daniel Guenette.

Said petition further states: "That said aforementioned persons are designated as respondents; that petitioner is advised and believes that certain misconduct and misbehavior hereinafter alleged of said respondents as such judges and clerks of said election at and during said election constitutes a criminal offense or criminal offenses against the People of the State of Illinois and also constitutes contempt or contempts of this honorable court. Petitioner further alleges and charges the fact to be that said respondents, while serving and acting as judges and clerks of said election in said precinct did fraudulently and unlawfully make a false canvass and return of the votes cast in said precinct at said election, and that, while serving and acting as judges and clerks of said election in said precinct, were guilty of corrupt and fraudulent conduct and practice in the duty of said respondents as judges and clerks of said election. Petitioner prays that an order and rule may be entered against the respondents commanding them to be and appear in this court at a time to be designated in said order, then and there to show cause, if any they can, why they and each of them, as officers of said court, should not be adjudged guilty of contempt or contempts of this court for misconduct and

misbehavior in office on account of the matters and things hereinabove alleged.''

Upon this petition an order was entered attaching the defendants. The sheriff brought them into court and they were admitted to bail on a $2,500 bond each.

By a stipulation of the parties the talley sheets and the recount figures were introduced in evidence and showed, among other things, the following:

| "Candidate | Official | Recount |
|---|---|---|
| Carl Fiedler | 302 | 336 |
| Oscar Fox | 332 | 283 |
| John W. Gansen, Jr. | 357 | 376 |
| Walter Krebs | 176 | 177 |
| Bernhard N. Landeen | 129 | 130 |
| Arthur H. Pannenborg | 139 | 142 |
| Maurino Ricchuto | 261 | 280 |
| John A. Zimy | 340 | 350 |
| Carl W. McGehee | 236 | 235 |
| August J. Zeller | 256 | 257 |
| Alice Klinger | 359 | 360 |
| Armand A. Gerardi | 36 | 37 |
| Cornelius Vanderwarf | 218 | 220 |
| Arthur A. Hinze | 131 | 132 |
| Joseph Josephson | 116 | 115'' |

The evidence introduced by the State is in substance as follows:

Benjamin W. Cooper testified that he was a watcher in the precinct in question on April 16, 1936; that he went there at the direction of captain Hopkins of the board of election commissioners in Chicago; that he arrived there about ten minutes to six in the morning; that his purpose in going there was to watch the general activities; that the poll officials were there and opened the polls at 6 a. m.; that the judges set up the ballot box and put it on the table; that he observed their activities during the day and watched the call and tally of the ballots at night; that he remained there until

the work was all finished, the ballot box sealed, packed and all paraphernalia taken away; that nothing irregular occurred during the day; that after the polls closed he was attentive to the proceedings and watched the judges as the votes were being called and noticed the ballots as the judges were calling from them and that the judges absolutely called the votes as the ballots were marked.

Cooper further testified that as the count of the votes was being made, he looked over the judge's shoulder or stood where he could see the judge calling the vote to see that they were being called correctly; that he could not account for the discrepancy in votes for Fiedler and Fox as not only the watchers from the election commissioners were watching but there were present other watchers and deputies with credentials from the various candidates and the judges representing the different factions; that he stood close to where the count was being made and the ballots were being turned over one by one and he saw each name called correctly; that he was in a very good position to see the tally sheet at the same time the call was made; that the names were called as they were voted on the ballot; that he could not account for any discrepancy; that the judges called the ballots one at a time, all individually; that only on one or two occasions was there any dispute, but "there wasn't any fuss or arguments" as to the tally of the count; that on one occasion the call was too fast and the tallier asked that they "kind of slow up" so that he wouldn't fall behind.

Captain Hopkins of the election commissioners' office stated that the two witnesses Cooper and Rourke were official employees of the election commissioners appointed by the board and paid by the board and returned their reports to the board and were given their credentials by the board.

Lloyd W. Rourke, called as a witness on behalf of respondents, testified that he was a watcher assigned to the 10th precinct in Chicago Heights on April 16, 1935, in the general election held there; that on the morning in question he arrived at the polls at ten minutes of six in the morning and stayed there until almost eight o'clock in the evening, which was after the ballots had all been counted and the packages sealed and returned to the city hall; that he watched the ballots as the judges were calling the votes and was in a position to see the ballots as they were called; that the judges absolutely called the ballots as they were marked; that he could not recollect the names of the judges, but would know them if he saw them and described one of the judges; that the call of the votes lasted from the time the polls closed until about 7:30. He identified Frank Kirgis, one of the respondents as the judge who was doing the calling.

Rourke further testifying stated that he stood right next to the desk and had a full view of the count and could see the ballots very closely; that there were several different watchers present watching the count; that at no time was there any dispute as to the correctness of the tallies by the clerks; that there may have been some minor disputes, just corrections or something of that kind but nothing outstanding; that the ballots were turned face down on the table, stacked up in front of the judge; that the judge picked up each ballot to call it and he would lay it in front of the watchers as he laid it in front of him so that the watchers could see; that it was not a big ballot but had just a few names thereon; that the ballots as he remembered had a group of candidates consisting of those for mayor of Chicago Heights and commissioner and two or three others; that he could not explain how Fox, who was a candidate for commissioner, received 50 votes more than he was entitled to because as far as he

could say "why the thing was just as much on the up and up as we could possibly see."

The evidence shows that the questioning of these watchers was conducted in the chambers of the judge and the other watchers who were at the polling place on the occasion in question were present, having been subpoenaed by defendants; that after the two watchers from the office of the election commissioner had testified, the attorney for the defendants asked if there were any watchers in the chambers who were present during the count of the votes; that the court thereupon stated that he would call all of the watchers and make them his witnesses; that thereupon Clarence Molyneaux was called as a court's witness.

Clarence Molyneaux testified that he was a watcher in the polling place during the count of the ballots; that no argument arose at any time as to the correctness of the count; that on one occasion one of the watchers was not able to see and he asked the judge to hold the ballots so he could see; that there was no dispute at any time between the judges and the clerks as to the correctness of their tallies nor when the work was completed and the clerks announced the results; that he stood directly in front of the judge as the ballots were being called and the votes were called as the ballots were marked.

John MacMurray testified as a court's witness that he was present in the polling place during the count of the ballots; that there was no irregularity there as to the calling of the votes; that he noticed no dispute at any time or quarrel as to the correctness of the count; that he knows since that there is a discrepancy between Fox and Fiedler but doesn't know how it arose; that nobody marked the ballots either during the count or after it; that he was standing in front of the judge, some of the time directly in front and the other times off on one side and remained there during the entire

time of the counting of the ballots and the judges called each ballot as it was marked; that he was able to see each ballot and to check each mark on the ballots; that "I claim that they called them just what was there."

Ernest Jones, called as a court's witness, testified that he was there during the count of the ballots and also stated he could not tell how the discrepancy occurred between the vote of Fox and Fielder; that he saw the greater part of the ballots as the judges were calling the votes from the ballots to the clerks; that he wouldn't say that he saw every ballot counted, but as far as he saw at the time he watched, the judges called the votes from the ballots as they were marked; that he was a watcher for John S. Thomas, candidate for mayor and was interested in three or four of the individual commissioners and Fox was one of the candidates in whom he was interested.

At the conclusion of Jones' testimony the court stated: "I find nothing against the clerks here, because they tallied as the votes were cast or called to them, so I will be obliged to discharge the clerks and dismiss the proceeding. If the respondents want to tell me and tell me how the thing happened, I would like to hear it. Otherwise, I will have to hold them responsible."

The evidence further shows that several other watchers were called and asked questions by the court.

A witness by the name of Gilbert testified that he was there for the specific purpose of watching the count on the police magistrate.

Another witness by the name of Cole testified that he was a watcher and did not know how the discrepancy occurred.

A witness by the name of Dubridge stated that he was a watcher, but that he did not know how the discrepancy occurred; that he was there during the count.

The witness Paul Pomrehn was asked by the court if he knew how the discrepancy occurred, but stated

that he remembered them saying that the light was bad in the room, that either Mr. Burns or Mr. Sheehan said that, he did not know which one; that he was a watcher for Gannon, candidate for mayor of Chicago Heights and was frequently in a position to see the ballots as they were called and on these occasions these ballots were called as they were marked.

The official report of watchers for the board of election commissioners was offered in evidence, which in substance is the same as their testimony, that there was no disturbance throughout the day at the polls and no violation of law and that the rules with reference to persons wearing badges remaining 100 feet from the polls, etc., were complied with.

James Sheehan, one of the respondents, testified that he is married and lives at 120 West Hickey street, Chicago Heights; that he lives there with his wife and two children; that he is in the restaurant business and has never been been arrested or charged with the violation of any law, either federal, state or municipal prior to these proceedings; that he acted as a judge of election on April 16, 1935 at the 10th precinct, Chicago Heights; that he arrived at the polling place five minutes of six; that during the day from time to time he checked the record on the voters coming in to vote to see that they were legitimate voters; that the polls closed at five o'clock and they started to count the ballots about 5:30; that after the polls closed they took a few minutes to eat; that when they started to count the votes the ballots were placed on the table in full view of everyone; that Mr. Burns commenced the count and all the judges alternated in calling; that he watched the call and was positive that the judges called the votes exactly as the ballots were marked; that he was not interested in the outcome of any candidate on the ticket that day and neither he nor the other judges sought to favor or disfavor any candidate or candidates; that

there had not been any discussion between the judges in that respect; that he had no interest whatsoever with respect to either of the candidates Fox or Fiedler or any other candidate and could not understand how the error occurred, but that it was not an error on the part of the judges if an error occurred; that he has served as a judge of election for eight years; that he never served as precinct captain nor has any member of his family; that prior to that day he did not know that the candidacy of Oscar Fox for commissioner was sponsored by John E. Thomas, candidate for mayor, nor did he know that the candidacy of Carl Fiedler for commissioner was sponsored by Thomas.

Frank Kirgis, another respondent, testified that he lived at 1668 Buena Vista Circle, Chicago Heights, and was a judge of election on April 16, 1935, in the 10th precinct in Chicago Heights; that probably 20 minutes after the polls had closed the ballot box was opened and the ballots taken out, put upon the table and straightened out and the count proceeded; that the judges alternated calling from the ballots; that Mr. Burns, one of the judges, started the call; that while Burns was calling the votes he, the witness, stood where he could see the ballots and every ballot was called as marked by the voter; that he had no particular candidate on that ticket that he was interested in and had no interest in the candidacy of either Fiedler or Fox; that he had not been requested by anyone to favor or disfavor either of them; that there had been no agreement entered into between the judges with respect to the candidates; that his sole interest was to watch the ballots and perform his duties on election day; that the votes were called as the ballots were marked as he kept his eyes riveted on the ballots to make sure the call was correct; that if an error was made it was not made by the judges; that he was a clerk in a Chicago Heights bowling alley and had served as judge of elec-

tion for six years; that he was a high school graduate and was married and lived with his wife and two children.

Steve Burns, who was also a respondent, testified that he lived at 17 West Hickey street, Chicago Heights, was 75 years old and was a janitor and a great grandfather; that after the polls closed he commenced the counting of the ballots; that regarding the light in the room that he had a new bulb put in the light before he started the count; that when he called the votes two other judges were standing one on each side of him; that he absolutely called the votes as the ballots were marked; that he had *no friends* or foes on the ballots and had no particular interest in the election of any person thereon; that he had no particular interest in the candidacy of either Fiedler or Fox, they were *both friends* of his; that he never entered into any agreement with anybody to favor or disfavor any candidate; that he had never been arrested for violating any law, either federal, state or municipal and that this was his first experience; that he lived with his wife at the address given; that his children were married and he was a great grandfather; that he could not see the clerks tallying because they were sitting four or five feet away; that he was in a position to see that the ballots were being called correctly, that was his business. He further stated, "I swear that if any mistake occurred there, that night, it didn't occur on the part of the judges"; that he heard no dispute or discussion of substantial difference referring to the count and heard nothing said about the discrepancy in the count of Fox or Fiedler; that when the two clerks announced the totals and they checked correctly, the judges announced the official figures; that he had no explanation for the discrepancy that occurred in the results as to Fox and Fiedler; that there were 16 watchers in the polling place; that the clerks did not tally on dummy sheets,

they didn't copy; that he thought they tallied on the original tally sheets.

No one could read this evidence without being impressed with the fact that the respondents herein were not shown to have been careless of the trust imposed in them.

It is to be noted that the clerks of election, whom the evidence shows put down the figures and tallied them, were discharged in the midst of the hearing. They were not sworn as witnesses nor were they interrogated in connection with the figures which they put down, which figures are the sole basis of this complaint.

The State claims that the evidence is sufficient to support its contention and cites the case of *People ex rel. Rusch v. Greenzeit,* 277 Ill. App. 479. In that case the clerks were sworn and testified that they put down the figures as called.

The defendants contend that the proof must be established beyond a reasonable doubt and cite in support of their contention the case of *People ex rel. Rusch v. Kotwas,* 363 Ill. 336. We do not think that case supports their contention.

The defendants denied any wrong doing and this was corroborated by the testimony of the watchers for the candidates and others who were at the polls when the ballots were counted. There was no evidence aside from such errors in the return that the defendants ever intended by word or act, or had any interest or desire to falsify the vote, or that they had any motive for doing so. There are no circumstances appearing in evidence from which an intention to make a false statement might be inferred. There was a mistake in the returns but the overwhelming evidence shows the defendants had nothing to do with writing the tallies on the returns.

We have set forth the testimony of the various witnesses at considerable length, and we are of the opinion

that the defendants did nothing intentionally which was contrary to the law and we do not believe the State sustained its position that the defendants were guilty by such clear and convincing evidence as would justify defendants' conviction. While every person should be interested in maintaining the sanctity of the ballot, yet persons on trial for an alleged violation of the law should not be deprived of their liberty and imprisoned, excepting by such evidence as proves their guilt.

In the instant case three men, whom the evidence shows to be respectable citizens, were found guilty and given the extreme punishment of one year in the county jail on charges which, after having been carefully investigated, are not supported by the evidence.

Inasmuch as there is not sufficient evidence in this case to support the conviction, the judgment of the county court is reversed.

*Judgment reversed.*

Hebel, P. J., and Hall, J., concur.